ROGERS, J.,
concurring in part and dissenting in part.
I agree with all aspects of the majority opinion, except with respect to the fraudulent conveyance claim. In this case, Scott Hunt transferred corporate funds to relieve his father-in-law of encumbrances held by Commonwealth Bank on his father-in-law’s property. Assuming that the funds, while owed to Commonwealth, should have gone first to CNH (the record is not clear on that point), the fact that CNH did not sue Commonwealth should not preclude a fraudulent conveyance claim against Pagano to the extent that Hunt’s payment discharged Pagano’s liability as guarantor and any corresponding encumbrances on his collateral.
So stated, this case is not materially different from a hypothetical suggested by CNH. Suppose a debtor transfers funds to relieve his spouse’s debt to a jewelry dealer for a ring that the spouse bought. If the debtor is trying thereby to protect his assets from his creditor, the creditor should not have to sue the jewelry dealer. Instead, the jeweler should be able to sue the spouse for the value of the ring.
This conclusion is supported by the numerous Kentucky cases that hold that the payment of a valid, preexisting debt can be a fraudulent conveyance if done with intent to defraud or hinder a creditor. See, e.g., Farmers’ Bank of Fountain Run v. Hagan, 242 Ky. 535, 46 S.W.2d 1084, 1087 (1932); Jadco Enters., Inc. v. Fannon, No. 6:12-225, 991 F.Supp.2d 947, 2014 WL 66521, at *3 (E.D.Ky. Jan. 8, 2014). Similarly, Kentucky courts have held that a creditor may have a fraudulent conveyance claim when a debtor improves the property of another in an effort to keep his assets from falling into the hands of creditors. See Pierce v. J.B. Pierce’s Trustee in Bankruptcy, 238 Ky. 495, 38 S.W.2d 254, 259 (1931). This case is similar because Hunt’s actions caused Pagano to receive lien-free collateral. Furthermore, CNH has identified factually similar eases involving actions against guarantors. For example, Permasteelisa CS Cprp. v. The Airolite Co., No. 2:06-CV-569, 2007 WL 4615779 (S.D.Ohio Dec. 31, 2007), involved a direct liability fraudulent conveyance claim brought against the president of a corporation. The president argued that because “he [was] not the ‘transferee,’ no judgment [could] be entered against him,” id. at *7 n. 3, i.e. the same argument Pagano makes here. The Permasteelisa court conceded that the president was not *474 the first transferee, but noted that “it could certainly be argued that the transfer was made for his benefit. He sought to sell TAC’s assets so that he could pay off the debt to People’s Bank to avoid being held personally liable on the loan.” Id.
On the other hand, GATX Corp. v. Ad-dington, 879 F.Supp.2d 633 (E.D.Ky.2012), is distinguishable. In that case, the defendant Larry Addington had guaranteed the debts of a foundering company. Id. at 637. Ostensibly to avoid paying the guaranty, Addington transferred many of his assets into an irrevocable trust and named Stephen and Robert as co-trustees. Id. at 63 8. GATX then sued Stephen and Robert in their individual capacities. Id. at 641. The court reasoned that GATX could not bring a fraudulent transfer action against Stephen and Robert because they were not transferees of any property in their individual capacity (property had only been transferred to the trust and to the two in their capacities as trustees). Id. at 642-43. That ruling is perfectly reasonable. The remedy for a fraudulent conveyance is the undoing of the transfer, but if no transfer occurred, there is nothing to undo. Further, an individual that does not receive a transfer could hardly be considered a transferee. But here, Pagano did receive a transfer of property: his unencumbered, pledged collateral.
Finally, cases like Permasteelisa are persuasive even though they discuss the law of jurisdictions that have adopted the Uniform Fraudulent Transfer Act. The UFTA specifically provides that “judgment may be entered against ... the person for whose benefit the transfer was made.” See, e.g., Ohio Rev.Code § 1336.08. Kentucky has not adopted the UFTA, but rather has enacted a fraudulent conveyance statute based on the English Statute of 13 Elizabeth. For that reason, the district court held that case law involving the UFTA was not persuasive. See CNH Capital Am. LLC v. Hunt Tractor Inc., No. 3:10-CV-350, 2013 WL 1310878, at *16 (W.D.Ky. Mar. 26, 2013). The fact that the Kentucky legislature has not chosen to adopt the UFTA does not mean that Kentucky has rejected the possibility that a fraudulent transfer suit can be brought against the beneficiary of a transfer. As the Kentucky Supreme Court recently held, “legislative inaction is a weak reed upon which to lean and a poor beacon to follow in construing a statute.” Shawnee Telecomm. Res., Inc. v. Brown, 354 S.W.3d 542, 560 (Ky.2011) (internal alterations omitted). It is just as likely that the Kentucky legislature chose not to adopt the UFTA because it assumed that persons for whose benefit a transfer was made were already liable under the current regime as it is that the legislature chose not to enact the UFTA to preclude liability against such individuals.
Assuming that there is a genuine issue as to whether Hunt acted with the requisite fraudulent intent, I would allow this claim to proceed to trial.